### In re BRUCE'S ESTATE.

(Surrogate's Court, New York County. May, 1896.)

REAPPRAISEMENT OF PROPERTY UNDER TRANSFER TAX ACT—SALE FOR GREATER AMOUNT.

Under the transfer tax act, providing that the valuation of the property should be made as of the date of the death of the decedent, in the absence of any mistake, fraud, or concealment in the first appraisement, a reappraisement will not be allowed on the ground that after the order fixing the tax on the first appraisement the property was sold at public auction for a price exceeding such appraisement.

Application on behalf of the state comptroller for an order remitting a transfer tax proceeding to the appraiser to take evidence as to the value of the real estate of David W. Bruce, deceased, and to make a further report of such facts as may be proved before him. Application denied.

ARNOLD, S. This is an application made on behalf of the state comptroller for an order remitting a transfer tax proceeding to the appraiser heretofore appointed therein to take evidence as to the

value of the real estate of the decedent, and to make a further and other report on such facts as may be adduced before him. The appraiser's report was filed in the surrogate's office on March 26th last, and an order fixing the tax has been entered thereon. The appraisement involved the valuation of a large amount of real estate of which the decedent died seised. Since the report was filed and order entered as aforesaid, this real estate has been sold at public auction, in this city, and the prices realized exceed the valuations of the appraiser in respect thereto. This appears to be the only ground upon which the comptroller asks for a reappraisement. Under the provisions of the transfer tax act, valuation of property is to be made as of the date of the death of the decedent, and the comptroller argues that the real estate in question must have been worth more at the death of this decedent than the valuation put upon it by the appraiser, because of the prices realized at the auction sale. Where there has been mistake, fraud, or concealment in the first appraisement, a new appraisement has been repeatedly allowed in this court; but none of these conditions exists, so far as shown by the papers, in the present case. The comptroller had full opportunity upon the first appraisement to produce and tender evidence as to the value of the real estate, and must be assumed either to have done so or to have been satisfied with the testimony of the witnesses produced by the other parties interested in that proceeding. If it had transpired upon the auction sale that this property brought less than the valuation put upon it by the appraiser, the comptroller, without doubt, could have claimed, and very justly, had an application for reappraisement on that ground been made on behalf of the executors or persons interested in the estate, that no ground was thereby shown for a reappraisement, which might decrease the tax fixed by the surrogate's order. It seems to me that such would be a fair view of the situation. The proceedings having been conducted in good faith, the best evidence procurable at the time having been placed before the appraiser, and all parties having acquiesced in his valuation, it would be introducing a dangerous practice, in the absence of mistake, fraud, or concealment, to retrace the proceeding because subsequent events have shown that, at a time many months after the death of the testator, some one was willing to pay more for the property than the valuations arrived at by the appraiser upon the proofs before him. I think that the comptroller should be remitted to his remedy by appeal from the order.

Application denied.